ATTORNEYS FOR PETITIONER:
**BRENT A. AUBERRY**
**ABRAHAM M. BENSON**
**DAVID A. SUESS**
FAEGRE DRINKER BIDDLE &
REATH LLP
Indianapolis, IN

ATTORNEYS FOR RESPONDENT:
**NICHOLAS J. BOGNANNO**
**BRETT E. NELSON**
**JOSHUA S. TATUM**
PLEWS SHADLEY RACHER &
BRAUN LLP
Indianapolis, IN

FILED
Dec 31 2020, 4:18 pm
CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

# IN THE
# INDIANA TAX COURT

|  |  |  |
|---|---|---|
| MEIJER STORES LIMITED PARTNERSHIP, | ) | |
| Petitioner, | ) | |
| v. | ) | Cause No. 19T-TA-00030 |
| BOONE COUNTY ASSESSOR, | ) | |
| Respondent. | ) | |

### ON APPEAL FROM THE FINAL DETERMINATION
### OF THE INDIANA BOARD OF TAX REVIEW

**FOR PUBLICATION**
**December 31, 2020**

Wentworth, J.

Meijer Stores Limited Partnership challenges the Indiana Board of Tax Review's final determination that increased the assessed value of its store located in Boone County, Indiana for the 2014 through 2017 tax years.[1] Upon review, the Court affirms the Indiana Board's final determination.

---

[1] Portions of the administrative record in this case have been designated as confidential. Consequently, this opinion will provide only the information necessary for the reader to understand its disposition of the issues presented. See IND. ST. ACCESS RULE 9(A)(2)(d) (2020).

**FACTS AND PROCEDURAL HISTORY**

Meijer owns and operates a 194,380 square foot freestanding retail store that was constructed in 2014 with related site improvements that is situated on a 17.63 acre parcel of land in Boone County, Indiana. (See, e.g., Cert. Admin. R. at 853, 1922 ¶ 20.) For the years at issue, the Assessor assigned Meijer's property the following assessed values:

| Assessment Year | Land | Improvements | Total |
|---|---|---|---|
| 2014 | $2,448,800 | $7,072,600 | $9,521,400 |
| 2015 | $2,448,800 | $9,430,100 | $11,878,900 |
| 2016 | $2,448,800 | $9,430,100 | $11,878,900 |
| 2017 | $2,448,800 | $9,430,100 | $11,878,900 |

(See Cert. Admin. R. at 7-8, 16, 24, 32.) Believing the assessed values of the improvements (the "Meijer store") to be too high, Meijer appealed to the Boone County Property Tax Assessment Board of Appeals and then to the Indiana Board of Tax Review. (See, e.g., Cert. Admin. R. at 1-4, 7, 11-13, 16, 19-21, 24, 27-29, 32.)

In December of 2018, the Indiana Board conducted an administrative hearing on all four years at issue. (See Cert. Admin. R. at 1916 ¶ 3.) For purposes of the hearing, Meijer and the Assessor agreed to provide evidence for the 2016 tax year alone. (See Cert. Admin. R. at 75, 1916 ¶ 3.) For the remaining years at issue, the parties stipulated that the assessments would be determined by applying their pre-determined trending formula to the Indiana Board's final determination of assessed value for the 2016 assessment year. (See Cert. Admin. R. at 765-67.) During the hearing, both parties presented appraisals that valued the subject property for the 2016 tax year using all three

approaches to value: the sales comparison approach, the income approach, and the cost approach. (See, e.g., Cert. Admin. R. at 856, 1035, 1407.)

## Meijer's Appraisal

Meijer's appraisal was prepared by Laurence G. Allen, a certified appraiser and a Member of the Appraisal Institute ("MAI"). (See Cert. Admin. R. at 963.) His appraisal estimated "the market value-in-use of the fee simple interest in the subject real property as of January 1, 2016." (Cert. Admin. R. at 856.)

## Sales Comparison Approach

Allen's sales comparison approach analysis estimated the total value of the subject property by comparing it directly with other purportedly comparable properties that had sold in the market. (See Cert. Admin. R. at 906-32.) Specifically, Allen based his valuation on the fee simple sales of eight other properties across five different states. (See Cert. Admin. R. at 906-17.) They ranged in size from 65,000 square feet to 193,000 square feet and ranged in age from 7 years old to 18 years old as of the sale date. (See Cert. Admin. R. at 908.) He adjusted these sales to account for differences in location, size, age and condition of the improvements, demographic attributes, and market conditions with the Meijer store. (Cert. Admin. R. at 918-29.) After making these adjustments, Allen used the data to estimate a market value-in-use for the subject property of $7,190,000. (Cert. Admin. R. at 932.)

## Income Approach

Under the income approach, Allen first developed an estimate of the Meijer store's market rent. (See Cert. Admin. R. at 933.) To do so, he identified ten comparable properties, and from them, selected four that he believed were the most comparable to

3

the subject property for further analysis.  (Cert. Admin. R. at 934.)  These four properties ranged in size from 91,000 square feet to 119,000 square feet and ranged in age from 19 years old to 24 years old as of their lease date.  (See Cert. Admin. R. at 936.)  Allen then made adjustments to their rental rates to account for arterial, demographic, and physical characteristics.  (See Cert. Admin. R. at 935-36.)  After estimating the Meijer store's market rent, Allen calculated its net operating income and applied a capitalization rate to arrive at a value conclusion for the Meijer store of $7,750,000.  (See Cert. Admin. R. at 936-44.)

### Cost Approach

Allen developed his cost approach by first estimating the value of the land to be $3,000,000.  (See Cert. Admin. R. at 945-46.)  Allen then estimated the Meijer store's replacement cost using the Marshall Valuation Service ("MVS"), subtracted physical depreciation, and concluded to a 2016 value, before obsolescence, of $10,946,461.  (See Cert. Admin. R. at 946-50, 955.)

Allen believed that the Meijer store suffered from both external and functional obsolescence.   (See Cert. Admin. R. at 950-51, 3007.)   He believed external obsolescence resulted from the impact that growing e-commerce sales had on physical retail locations.  (See, e.g., Cert. Admin. R. at 950-51, 2812.)  Allen also believed the property suffered from functional obsolescence.   (See Cert. Admin. R. at 950-51.) Specifically, Allen explained that the Meijer store suffered a loss of value because it was oversized for what is generally required in the market and has a design specific only to a Meijer business.  (See Cert. Admin. R. at 950-51, 3007-09.)  Allen calculated the total impact of the external and functional obsolescence to be $5,710,268 by estimating the

4

loss in income caused by the obsolescence. (See Cert. Admin. R. at 953-54.) After adding back the land value, Allen concluded that the Meijer store's market value-in-use under the cost approach was $8,240,000. (See Cert. Admin. R. at 955.)

### The Assessor's Appraisals

The Assessor presented two appraisals, both prepared by Samuel D. Koon, who is also a certified appraiser and MAI. (See, e.g., Cert. Admin. R. at 1129-30, 2103.) Koon prepared his first appraisal on June 8, 2018; his cost approach used MVS data. (See, e.g., Cert. Admin. R. at 1029-30, 2126-27, 2580.) Koon prepared his second appraisal on December 13, 2018; his cost approach in that appraisal used the actual construction cost data received from Meijer. (See Cert. Admin. R. at 1401-02.) Otherwise, Koon's appraisals were identical regarding the sales comparison and income approaches. (Compare Cert. Admin. R. at 1080-1124, with Cert. Admin. R. at 1451-93.) In the first appraisal, Koon gave the most weight to the value resulting from the income approach; however, in his second appraisal, he gave the most weight to his valuation estimate under the cost approach. (Compare Cert. Admin. R. at 1123-24, with Cert. Admin. R. at 1493-94.)

### Sales Comparison Approach

In his sales comparison approach analysis, Koon identified and relied on the sales of seven comparable properties. (See, e.g., Cert. Admin. R. at 1103-16.) After adjusting for differences in various property characteristics (i.e., age, condition, size, and location), Koon estimated the value of the Meijer property to be $14,450,000. (See, e.g., Cert. Admin. R. at 1116-22.)

**Income Approach**

Koon identified five comparable properties, different from those he used in his sales comparison approach, to determine Meijer's market rent. (See, e.g., Cert. Admin. R. at 1080-89.) Koon adjusted the rental income data from the comparables to account for differences in lease terms, age and condition of the property, construction quality, and location. (See Cert. Admin. R. at 1089-91.) After estimating market rent, Koon determined net operating income, applied a capitalization rate, and arrived at a value conclusion for the Meijer store of $14,400,000. (See, e.g., Cert. Admin. R. at 1092-1102.)

**Cost Approach**

Koon concluded that Meijer's land value was $3,090,000. (See, e.g., Cert. Admin. R. at 1071-72.) As stated above, however, Koon prepared two cost approach valuations, one using MVS data and the second using actual costs.

In his first appraisal, Koon's cost approach utilized MVS cost schedules and estimated the replacement cost of the Meijer store to be $11,628,000. (See Cert. Admin. R. at 1073-78.) From this estimate, Koon deducted physical depreciation and added the estimated land value to arrive at a final overall value of $14,140,000. (See, e.g., Cert. Admin. R. at 1078-79.). Unlike Allen, Koon did not believe the property suffered from external or functional obsolescence; thus, he made no obsolescence adjustment. (See Cert. Admin. R. at 1077-78.)

In his second appraisal, Koon's cost approach estimated the value of the Meijer store using the property's actual construction costs. (See Cert. Admin. R. at 1446-48, 2145-47.) Koon's estimate of value for the Meijer store using actual costs was $16,550,000. (See Cert. Admin. R. at 1079, 1450.)

6

## The Indiana Board's Final Determination

The Indiana Board issued its final determination on August 28, 2019. In it, the Indiana Board highlighted several unique features of the Meijer store, including its size, age, condition, location, neighborhood, design, and lease characteristics. (See Cert. Admin. R. at 1922-24 ¶¶ 22-24.) For instance, the Indiana Board described the property both as a "mega warehouse store," because the building is 100%-150% larger than most large discount or big box stores, and as a "superstore," because it has groceries and non-groceries. (See Cert. Admin. R. at 1923-24 ¶ 23.) The Indiana Board noted that because the store includes a grocery, it has more loading docks and HVAC than big box stores without a grocery. (See Cert. Admin. R. at 1924 ¶ 23, 1947-48 ¶ 102.)

In reviewing Allen's appraisal, the Indiana Board noted that he considered the sales comparison approach the best indicator of value. (See Cert. Admin. R. at 1926 ¶ 31.) In addition, the Indiana Board explained that Allen believed that a "fee simple" valuation requires that all properties used as comparables must be unencumbered by a lease; in other words, leased-fee properties could not be used as comparables. (See Cert. Admin. R. at 1925-26 ¶ 27.)

In reviewing Koon's appraisals, the Indiana Board noted that Koon placed the most weight to the cost approach in his second appraisal as the best estimate of the Meijer store's value. (See Cert. Admin. R. at 1934 ¶ 57.) Furthermore, the Indiana Board explained that Koon, unlike Allen, believed the use of vacant, dark stores as comparable sales was improper because it would not reflect a property's highest and best use. (See Cert. Admin. R. at 1934 ¶ 58.) The Indiana Board considered the differences between Allen's and Koon's use of comparables indicative of the "dark box controversy" (i.e.,

7

whether vacant or non-vacant property sales can be used as comparable properties for a fee simple valuation).  (See Cert. Admin. R. at 1948-49 ¶¶ 103-05.)

Based on the characteristics of the subject property, the Indiana Board found that neither expert identified properties in either their sales comparison or income approaches that were sufficiently comparable to the Meijer store, rendering all of them unreliable. (See Cert. Admin. R. at 1947-48 ¶ 102, 1950 ¶ 107, 1952 ¶ 113.)  The Indiana Board then determined, that based on these specific facts before it, the cost approach was the most reliable methodology for valuing the Meijer store because it "avoids the controversies over the definition of fee simple ownership" and "is particularly useful in valuing new or nearly new improvements and properties that are not frequently exchanged in the market."  (See Cert. Admin. R. at 1947-50 ¶¶ 102, 105-08, 1952 ¶ 113.)

In weighing the competing cost approach valuations, the Indiana Board noted that there was "little controversy regarding substantial portions of the cost approach process." (Cert. Admin. R. at 1950 ¶ 108.)  Indeed, it found that Allen's and Koon's cost estimates prior to deducting obsolescence were very similar.  (See Cert. Admin. R. at 1950 ¶ 108.) The Indiana Board concluded, however, that Allen's obsolescence calculation was not reliable because it 1) "did not identify any specific inadequacy that diminishes the Meijer [s]tore's desirability or usefulness[,]" and 2) was derived from his income approach that the Indiana Board determined was unreliable.  (See Cert. Admin. R. at 1951-52 ¶ 110-13.)

In evaluating Koon's two cost approach valuations, the Indiana Board found that the one that used MVS data was more credible than the one using actual costs because the latter "failed to incorporate market data."  (See Cert. Admin. R. at 1953 ¶ 114.)  The

8

Indiana Board further determined that functional obsolescence present in the property was inherently accounted for in Koon's first cost approach analysis, because its final value was more than 18% lower than the one in his second cost approach that used actual costs. (See Cert. Admin. R. at 1954 ¶ 116.) The Indiana Board therefore concluded that the cost approach in Koon's first appraisal, excluding the adjustment for entrepreneurial profit, was the most credible and the best indication of the property's market value-in-use. (See Cert. Admin. R. at 1953 ¶ 115.) Accordingly, the Indiana Board valued the subject property at $12,798,600 for the 2016 tax year. (See Cert. Admin. R. at 1953 ¶ 115, 1956 ¶ 119.)

On October 11, 2019, Meijer initiated this original tax appeal. The Court conducted oral argument on May 13, 2020. Additional facts will be added as necessary.

**STANDARD OF REVIEW**

The party seeking to overturn an Indiana Board final determination bears the burden of demonstrating its invalidity. CVS Corp. v. Searcy, 137 N.E.3d 1053, 1055 (Ind. Tax Ct. 2019). To prevail here, therefore, Meijer must demonstrate that the Indiana Board's final determination is arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; contrary to constitutional right, power, privilege, or immunity; in excess of or short of statutory jurisdiction, authority, or limitations; without observance of the procedure required by law; or unsupported by substantial or reliable evidence. See IND. CODE § 33-26-6-6(e)(1)-(5) (2020).

**LAW AND ANALYSIS**

On appeal, Meijer asks the Court to reverse the Indiana Board's final determination claiming that its central findings are unsupported by substantial or reliable evidence,

9

arbitrary and capricious, an abuse of discretion, and contrary to Indiana law.  (Pet'r Br. at 11.)  Meijer specifically asserts that the Indiana Board erred in finding that 1) Meijer's sales comparison and income approaches were not probative; 2) the cost approach provided the most reliable valuation of the property; and 3) a deduction for obsolescence was not required.  (See generally Pet'r Br.; Pet'r Reply Br.)

## I.      Meijer's Sales Comparison and Income Approaches

Meijer first claims that the Indiana Board erred by rejecting Allen's sales comparison and income approaches based on its identification of a "mega warehouse superstore" submarket and its "market segmentation" analysis that was inconsistent with generally accepted appraisal principles or record evidence.  (See Pet'r Br. at 2, 11.)  Meijer explains that, while the Indiana Board used a "big box" submarket of "mega warehouse superstores" to disqualify Allen's sales comparison and income approaches, no witness, appraisal expert, or record evidence identified that submarket.  (See Pet'r Br. at 17-24; Pet'r Reply Br. at 4-5.)  Thus, Meijer contends that the Indiana Board provided no basis for its "contrived" market segmentation analysis either in fact or by using generally accepted appraisal principles.  (See Pet'r Br. at 12-17; Pet'r Reply Br. at 2-9.)

A market segmentation analysis is the "process by which markets and submarkets for a property are identified and analyzed" to assist in either "refuting or supporting the purported comparability of a sale or appropriateness of a valuation approach in an opinion of [] value."  50 IND. ADMIN. CODE 30-2-7 (2018); 50 IND. ADMIN. CODE 30-3-1(a) (2018).  "With respect to the assessment of an improved property, a valuation does not reflect the [] value of the improved property if the purportedly comparable sale properties supporting

the valuation have a different market or submarket than the current use of the improved property, based on a market segmentation analysis." IND. CODE § 6-1.1-31-6(d) (2018).

To embark on a market segmentation analysis, as Meijer claims it did, the Indiana Board was required to use generally accepted appraisal principles. See I.C. § 6-1.1-31-6(d); 50 I.A.C. 30-3-1(b). Generally accepted appraisal principles are those "recognized in the appraisal community as authoritative" and can come from sources such as the Uniform Standards of Professional Appraisal Practice ("USPAP") and the interpretations of USPAP. See 50 IND. ADMIN. CODE 30-2-4 (2018). Meijer argues that because the Indiana Board did not identify its analysis as a market segmentation analysis nor explain how its analysis conformed to generally accepted appraisal principles, its finding that Meijer's purported comparable sales were unreliable must be reversed. (See Pet'r Br. at 17-24.)

The Legislature has specifically authorized "the Indiana Board as trier of fact, to review the probative value of an appraisal report." IND. CODE § 6-1.1-15-4(p) (2018). When reviewing an assessment, the Indiana Board is required to "determine the relevance and weight to be assigned to the evidence" before it. 52 IND. ADMIN. CODE 4-6-9(c) (2018). The Court finds that what Meijer claims is the Indiana Board improperly performing a market segmentation analysis of big box stores over 150,000 square feet was simply the Indiana Board acting within the scope of its authority and weighing evidence to determine its reliability. Because the Indiana Board did not perform a market segmentation analysis, but simply used "mega warehouse superstores" as a guide for weighing comparability, the Court will not reverse the Indiana Board's determination that Allen's sales comparison and income approaches were unreliable.

11

## II.     The Cost Approach

Meijer also contends that the Indiana Board's reliance on the cost approach as the sole method to value the Meijer store is arbitrary and capricious and an abuse of discretion.  (See Pet'r Br. at 26-27.)  Specifically, Meijer claims that the Indiana Board wrongly relies solely on the cost approach because 1) the cost approach is not appropriate to value a property with substantial obsolescence and 2) using the cost approach to avoid "a purported 'thorny' controversary [sic] 'over the definition of fee simple ownership'" is not reasonable.  (Pet'r Br. at 24, 28.)

### 1.

Meijer explains that the Indiana Board "want[s] it both ways" by stating that the cost approach is most appropriate for newer properties impaired by only <u>minor</u> depreciation, then contradicting itself by recognizing that the Meijer property was impacted by substantial obsolescence.  (See Pet'r Reply Br. at 14.) (See also Pet'r Br. at 28.)  The Court, however, does not find Meijer's argument persuasive.

<u>The Appraisal of Real Estate</u> provides that of the three approaches to value, "[t]he [cost] approach is especially persuasive when the land value is well-supported and the improvements are new <u>or</u> suffer only minor depreciation[.]"  The Appraisal Institute, THE APPRAISAL OF REAL ESTATE 47, 566 (14th ed. 2013) (emphasis added).  Here, Meijer's land value was well-supported because both Allen and Koon valued the land similarly.  (See Cert. Admin. R. at 1949-50 ¶ 106 (noting that Allen valued the land at $3,000,000 and Koon valued the land at $3,090,000).)  In addition, the Indiana Board noted that the Meijer property was relatively new, less than two years old on the assessment date, and suffered from minor physical depreciation.  (See, e.g., Cert. Admin. R. at 1922 ¶ 20, 1950

12

¶ 108 (noting that Allen's and Koon's physical depreciation adjustments were similar).) Accordingly, the Court finds the Indiana Board's use of the cost approach was reasonable.[2]

2.

Next, Meijer claims the Indiana Board abused its discretion by relying on the cost approach alone to avoid addressing any "thorny" issues between experts on the so-called "dark box controversy." (See Pet'r Reply Br. at 11, 24.) As Meijer itself acknowledges, however, any dark box controversy is illusory in Indiana. (See Pet'r Reply Br. at 11.) The Court has put to rest any purported controversy about fee simple valuation by holding that because property taxes apply exclusively to real property (i.e., the land and improvements to the land) and not to intangible business value, investment value, or the value of contractual rights, the use of vacant property comparables can be appropriate. See, e.g., Switzerland Cnty. Assessor v. Belterra Resort Indiana, LLC, 101 N.E.3d 895, 905 (Ind. Tax Ct. 2018), review denied; Stinson v. Trimas Fasteners, Inc., 923 N.E.2d 496, 501 (Ind. Tax Ct. 2010) (rejecting the Assessor's claim that "while the [market] value-in-use of a vacant property is just the value of the 'sticks and bricks,' the [market] value-in-use of [an occupied] property should be 'over and above' that."). This precedent renders the Indiana Board's "avoidance of controversy" rationale ineffective. Nevertheless, the Court will not disturb the Indiana Board's finding because, based on appraisal authority, its reliance on the cost approach was reasonable and supported by substantial evidence. Accordingly, the Court will not reverse the final determination on this basis.

---

[2] Obsolescence depreciation will be discussed separately later in this opinion.

### III. Obsolescence

Finally, Meijer asserts that the Indiana Board abused its discretion by failing to meaningfully address the data, analysis, and quantification supporting its claimed obsolescence adjustment. (Pet'r Br. at 37.) Meijer complains that "[t]he Board's concluded value applying solely the cost approach does not account for all forms of obsolescence and does not properly reflect the [s]ubject [p]roperty's market value-in-use." (Pet'r Br. at 35.) Obsolescence is "[a] diminishing of a property's desirability and usefulness brought about by either functional inadequacies or super-adequacies inherent in the property itself, or adverse economic factors external to the property." REAL PROPERTY ASSESSMENT GUIDELINES FOR 2011 (incorporated by reference at 50 IND. ADMIN. CODE 2.4-1-2(c) (2011)), Bk. 2, Glossary at 16. In rejecting Allen's obsolescence deduction, the Indiana Board states that "Allen did not identify any specific inadequacy that diminishes the Meijer [s]tore's desirability or usefulness." (Cert. Admin. R. at 1951 ¶ 110.) Nonetheless, the Indiana Board agreed that the Meijer store suffered from obsolescence yet still found that Allen's capitalized rent loss analysis method "was largely derivative of his income approach[ and therefore] its reliability depends on the probative value of [his] income approach." (See Cert. Admin. R. at 1951-52 ¶ 111.) Having found Allen's income approach to be unreliable, due to the lack of truly comparable properties, the Indiana Board found Allen's obsolescence calculation "derivatively" unreliable. (See Cert. Admin. R. at 1952 ¶ 113.)

Furthermore, the Indiana Board compared the actual costs of construction in Koon's second cost approach with the MVS costs in his first cost approach analysis, finding the difference "roughly reflects obsolescence of 18%." (See Cert. Admin. R. at

14

1953-54 ¶ 116.)  Accordingly, it was reasonable for the Indiana Board to conclude that Koon's first cost approach inherently accounted for "substantial immediate obsolescence for features unique to the Meijer [s]tore."  (Cert. Admin. R. at 1953-54 ¶ 116.)  Therefore, the Court will not reverse the final determination on this basis.

## CONCLUSION

Meijer has not demonstrated to the Court that the Indiana Board erred in rejecting its sales comparison and income approach valuations, adopting the Assessor's cost approach, or rejecting its obsolescence calculation.  Accordingly, the Indiana Board's final determination is AFFIRMED.